IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | Criminal Action No. 2:15-311-RMG |
| ) | |
| v.   ) | **ORDER** |
| ) | |
| Alex White, III.   ) | |
| _____) | |

This matter is before the Court on Defendant's motion to suppress evidence obtained from an inventory search of Defendant's vehicle after Defendant's arrest. For the reasons set forth below, the Court denies the motion.

I.  **Background**

On the evening of January 20–21, 2015, Charleston police officer Michael D. Kaldon was assigned to "Power Shift"—an interdiction-type unit that patrols high-crime areas. (Suppress. Hr'g Tr. 8:18–9:11, May 12, 2016, Dkt. No. 84.) His primary role was to patrol hotels along Savannah Highway. (*Id.* 9:12–15.) At 12:26 a.m., Officer Kaldon saw a black Ford F-150 truck traveling south on Savage Road toward Parnell Lane in the West Ashley area of Charleston. (Dkt. No. 49-1 at 2.) After observing the truck swerve across the solid white traffic line along the shoulder of the road, Officer Kaldon initiated a traffic stop. (H'rg Tr. 15:12–21.) The truck continued to travel for about 500 feet before stopping on an I-526 eastbound onramp. (*Id.* 16:3–7.) Neither Defendant, the driver, nor Derrick Burroughs, his passenger, had driver's licenses. (*Id.* 18:22–19:3.) Defendant and Mr. Burroughs did identify themselves accurately to police. (*Id.* 19:21–20:2.) Using that information, Officer Kaldon learned of an outstanding warrant for Defendant's arrest for possession of heroin. (*Id.* 20:3–8.) Defendant was then arrested. (*Id.* 20:9–11.) Because no licensed drivers for Defendant's vehicle were available, and because it was at an unsafe location, police arranged to have the vehicle towed. (*Id.* 21:5–20.)

-2-

An inventory search of Defendant's vehicle was conducted before it was towed. (*Id.* 21:21–22.) A loaded silver H&R revolver and an unloaded black Beretta handgun were found within a black Dell laptop computer briefcase on the back floorboard of the driver's side of the truck. (*Id.* 24:4–25:2; Dkt. No. 49-1 at 2–3.) Both weapons were inside a silver plastic bag; the Beretta was also inside a sock. (Hr'g Tr. 24:4–25:2.) Defendant was charged with unlawful carrying of a handgun and possession of a firearm with an obliterated serial number. (Dkt. No. 49-1 at 3.) He was also issued a warning ticket for improper lane use. (*Id.*)

On May 13, 2015, Defendant was indicted for unlawful transport of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Defendant has moved to suppress all items seized because of the traffic stop on the bases that the stop was not supported by probable cause and that the inventory search was invalid. Specifically, Defendant asserts that Officer Kaldon's report that Defendant's truck was swerving is not credible without supporting dashboard camera footage, that the Charleston Police Department's inventory search policy is constitutionally defective because it insufficiently limits the discretion of the searching officer, and that Officer Kaldon conducted the inventory search of Defendant's vehicle in a manner contrary to departmental policy.

After Defendant filed the present motion to suppress, the Court permitted Defendant significant discovery. The Court granted Defendant's motions for subpoenas for, *inter alia*, all audio recordings and logs of radio transmissions regarding Officer Kaldon's stop of Defendant's vehicle, an accounting of each police cruiser video camera system the City of Charleston has in its possession, all records relating to the video camera system installed in Officer Kaldon's police cruiser, all departmental policies pertaining to the use and maintenance of in-car camera systems, Officer Kaldon's complete personnel file, and all documents relating to the "Power Shift" unit to

which officer Michael Kaldon was assigned on January 21, 2015. (Dkt. Nos. 47, 63, 64, 66, 76.) A suppression hearing was held on May 12, 2016; at that hearing, Officer Kaldon, Sergeant Hurteau (Officer Kaldon's shift supervisor on the night of January 20–21, 2015), and defense investigator Christopher Robinson testified. (Dkt. No. 84.)

## II.  Legal Standard

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Generally, when the police obtain evidence in violation of the Fourth Amendment, "the judicially developed exclusionary rule . . . precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). As an initial matter, when moving to suppress evidence as the fruits of an illegal search the movant must establish standing to raise a Fourth Amendment challenge to the search at issue. *Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978). The movant generally must also demonstrate the illegality the search at issue. *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980). However, where a search is claimed to be illegal and no search warrant was used, the Government bears the burden of demonstrating the legality of the search. *United States v. Jeffers*, 342 U.S. 48, 51 (1951). Whichever party bears the burden must show that the search was legal or illegal by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 (1974).

## III.  Discussion

### A.  Probable Cause for the Traffic Stop

Traffic stops are seizures under the Fourth Amendment and therefore are subject to the Fourth Amendment's prohibition against "unreasonable" seizures. *Whren v. United States*, 517

U.S. 806, 810 (1996). The reason for the traffic stop must be legitimate and the officer's actions must be "reasonably related in scope" to those reasons. *Terry v. Ohio*, 392 U.S. 1, 20 (1986); *see also United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). Probable cause to believe that a violation of the traffic code has occurred is a legitimate and sufficient reason for a traffic stop; the officer's actual or subjective motivations for initiating the stop are irrelevant. *Whren*, 517 U.S. at 813, 819. An inventory search of a vehicle is "reasonably related in scope" to a traffic stop that results in the impoundment of the vehicle. *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009).

Officer Kaldon testified that he observed Defendant's vehicle swerve across the white traffic line along the shoulder of the road. (Hr'g 49:19–21.) His testimony is consistent with his report of the incident and with the warning ticket issued to Defendant. (*See* Dkt. No. 49-1.) Swerving across the white traffic line is a traffic violation. S.C. Code § 56-5-1810, 1900. At the suppression hearing, Defendant's counsel responded to the Court's question, "Is it your assertion that the swerving never occurred?" with the answer "Yes. Exactly so, Your Honor."[1] (Hr'g Tr. 42:6–8.) But Defendant offers no evidence supporting that assertion, nor any evidence to rebut Officer Kaldon's testimony. No one testified that Defendant did not commit a traffic violation. Defendant himself did not deny committing a traffic violation, even though he could have done so without prejudice to his Fifth Amendment rights at trial. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.").

---

[1] Defendant's motion papers do not explicitly deny that Defendant committed the traffic violation.

-4-

-5-

Instead, Defendant points to the lack of a police dashboard video recording of the traffic stop in this case. Defendant apparently wants the Court to find that no traffic violation occurred as a spoliation inference: "The spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence . . . but also against one who fails to preserve or produce evidence-including the testimony of witnesses." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Defendant claims that Officer Kaldon acted to prevent his camera from recording the full incident (*see* Hr'g Tr. 52:11–55:1, 115:13–19 (claiming that Officer Kaldon delayed activation of his blue lights by more than thirty seconds to prevent any video recording after observing the infraction, because of his purported unawareness of the fact that his video camera was not working), yet Defendant also claims that Officer Kaldon deliberately began his patrol when fully aware that his camera was not functioning, contrary to department policy (*see id.* 38:15–41:7 (claiming that Officer Kaldon should not have begun any patrol shift, regardless of public safety issues, until he had resolved technical issues with his vehicle's camera)).

The Court, however, need not reach any issues regarding video recordings because Defendant has neither denied that he committed the traffic violation that Officer Kaldon testified to observing nor produced any evidence that might call Officer Kaldon's testimony into question.[2]

---

[2] The Court cannot speculate as to how it might have weighed hypothetical testimony denying the traffic violation. But the issue of police vehicle-mounted cameras was extensively covered at the suppression hearing. Officer Kaldon and Sergeant Hurteau credibly explained, under oath, how known computer compatibility issues prevented Officer Kaldon's dashboard camera from operating properly. Further, Officer Kaldon typically would not operate a marked police cruiser equipped with a camera while on "Power Shift" duties; he was operating such a vehicle on the night of January 20–21, 2015 only because another officer was then on annual leave. (Hr'g Tr.

The Court credits Officer Kaldon's uncontroverted testimony and finds that he had probable cause to initiate the traffic stop of Defendant's vehicle on January 21, 2015, and, since neither Defendant nor his passenger were thereafter available to take possession of the vehicle, that a valid inventory search of Defendant's vehicle, prior to towing it, was within the scope of that traffic stop.

### B. Constitutionality of the Inventory Search

Inventory searches are an exception to the general rule that police must obtain a warrant before conducting a search. *Matthews*, 591 F.3d at 234. When police impound vehicles, they are permitted to conduct inventory searches to protect property therein from loss, and to protect the police from potentially dangerous items. *Id.* at 235. A valid inventory search must be performed pursuant to standardized criteria applied in good faith. *Id.* Such standardized criteria may allow police to exercise discretion when performing an inventory search, so long as that discretion is not based on suspicion of criminal activity. Officers should have discretion only to the extent necessary to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Coloardo v. Bertine*, 479 U.S. 367, 372 (1987) (quotation marks omitted). Inventory searches are not a "general means of discovering evidence of crime." *Id.* at 376. A valid policy may allow police discretion to decide whether to open containers within the vehicle when they are unable to ascertain the contents of those containers from exterior inspection. *Matthews*, 591 F.3d at 238.

Defendant argues that the inventory search in this case was invalid for two reasons. Defendant makes a facial challenge to the constitutionality of the Charleston Police Department's

---

88:1–24.) Defendant adduced no evidence suggesting that anyone acted in bad faith regarding any video recording equipment. Thus, even if Officer Kaldon's testimony that he observed a traffic violation had been controverted, Court would have ruled on the credibility of the witnesses without drawing any inferences from the lack of a video recording.

inventory search policy. Defendant also argues that Officer Kaldon conducted the inventory search in a manner inconsistent with established policy.

First, Defendant argues that the Charleston Police Department's inventory search policy fails to limit the discretion of the searching officer sufficiently to place the policy within the inventory search exception to the general Fourth Amendment requirement that police obtain a search warrant. Defendant argues that the policy "is constitutionally defective" because "the discretion possessed by the officer is not regulated in any meaningful manner," as shown simply by reference to the policy language itself, without reference to the particular circumstances of any particular case. (Def.'s Mot. to Suppress 7–8, Jan. 20, 2016, Dkt. No. 44.) That is a facial constitutional challenge: one where "no application of the [policy] would be constitutional." *Sabri v. United States*, 541 U.S. 600, 609 (2004); (*see also* Hr'g Tr. 6:2–12 (conceding that Defendant's constitutional challenge to the search policy is a facial challenge)).

However, Defendant cannot avoid the fact that the inventory search policy was constitutional as applied in his own case by mounting a more general facial challenge to the policy. If application of the Charleston Police Department's policy in any case—including Defendant's—is constitutional, then Defendant's facial challenge fails. Here, Defendant argues that the policy is defective because it does not identify the particular areas of the vehicle to be searched. Defendant contrasts the Charleston Police Department's policy with the policy the Fourth Circuit approved in *Matthews*, which identified specific areas to be searched, *e.g.*, the interior, trunk, and glove compartment, and which required a "complete inventory" which necessarily required searching closed containers within the vehicle. *See* 591 F.3d at 237–38. *Arguendo*, the Charleston Police Department's policy might be problematic on the facts of cases other than the instant case, for example, a case where police ripped out door panels to find concealed drugs—were it not for

the fact that the policy prohibits removing door panels or similar actions. (*See* Dkt. No. 49-2 at 2.) But in this case, police searched an unlocked laptop computer case resting on the vehicle floor. (Hr'g Tr. 23:1–5–16.) Police inventorying the contents of a vehicle may look into a laptop computer case on the floor to see if it in fact contains a laptop computer (for which the police would then be accountable). (*See* Hr'g Tr. 23:17–24 (Officer Kaldon stating that he searched the computer case to determine whether a computer was present, "so we [the police] are not held accountable" for a computer if no computer was present).) Because the Charleston Police Department's policy is constitutional as applied to Defendant, Defendant's facial challenge to the policy must fail.

Second, Defendant argues that Officer Kaldon did not conduct his search in accordance with established policy, because he opened the laptop computer case and then opened two smaller containers within: a silver plastic bag and a sock within that, each containing a pistol. As noted above, Officer Kaldon properly opened the laptop computer case. A plastic bag containing a pistol and a sock containing a pistol are not "'closed containers whose contents officers . . . are unable to ascertain from examining the containers' exteriors.'" *Matthews*, 591 F.3d 230, 238 (4th Cir. 2009) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). Officer Kaldon knew that the plastic bag and the sock probably contained items of value from exterior inspection. (*See* Hr'g Tr. 24:5–25:2 (Officer Kaldon testifying that the plastic bag had "a good amount of weight" and that the sock was in the shape of a gun).) Further, a pistol is a dangerous item. A search within the plastic bag or sock to ascertain the danger—*i.e.*, to determine if the weapon is loaded or whether its trigger safety is locked—is within the proper scope of an inventory search. *Bertine*, 479 U.S. at 372 (holding that inventory search policies may "guard the police from danger"). Although the Charleston Police Department's inventory search policy only discusses the need to protect property

and to protect the police from false claims of theft (*see* Dkt. No. 49-2 at 2–3), safety concerns are justifications for inventory searches, *Matthews*, 591 F.3d at 235, and towing a vehicle while an undiscovered, loaded firearm lies in the floorboard was a safety hazard prevented by Officer Kaldon's inventory search.

The Court therefore finds that the Charleston Police Department's vehicle inventory search policy is constitutional, and that on January 21, 2015, Officer Kaldon conducted a lawful and valid inventory search of Defendant's vehicle in accordance with that policy, as a result of which Officer Kaldon discovered a H&R pistol and Beretta pistol in the passenger compartment of Defendant's vehicle.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to suppress (Dkt. No. 44) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

May 26, 2016
Charleston, South Carolina